Good morning, Your Honor. This is Matthew Weber for Mr. Hoang. May it please the Court. This case, the problem with this case is the BIA issued a decision in 1999 to define the INA, Immigration and Nationality Act, definition of the aggravated felony, an offense related to obstruction of justice, perjury, and subordination of perjury. And in doing so, they put a specific, very specific definition, which this Court has relied upon twice, has deferred to that definition under Chevron. That definition was an act of interference with proceedings of a tribunal or investigation or action or threat of action against those who would cooperate in the process of justice. Along with that, they had a specific mens rea, the specific intent to interfere with the process of justice. That decision was based upon U.S. v. Aguilar and a decision written by Justice Rehnquist, which held that the federal crime of obstruction of justice required specific intent to interfere with an ongoing judicial proceeding. Not a previous, not prior to a judicial proceeding, not afterwards, but an ongoing judicial proceeding, because that crime was designed, that offense was designed by Congress to protect the judicial process from interference and corrupt minds. The BIA, in coming to this definition, said specifically that this definition is narrowly construed. Not any crime that may conceivably obstruct justice is included in here. Counsel, what does the record show here as to whether there was an ongoing proceeding? Exactly tell us what's in the record that we can look at. Nothing. Nothing. In this case, the Washington statute requires that the defendant knew that the, in this particular case, that he knew that the principal had committed a felony. So I wanted you to get specific as to the facts in this record which we may look at. The only thing in this record of conviction is that he entered a plea to transporting, transporting a man who had, a person who had committed, who had committed a drive-by shooting was the allegation. Now, under the categorical approach, the issue was, in fact, that it was a, that he committed a felony. But that wasn't it. There is nothing in there whatsoever that indicates, and he pled guilty to that. And the Washington statute requires that he has an intent to impede, hinder, or delay an investigation or prosecution. The intent to, the investigation or prosecution. There is no requirement, and it was not shown, there's no statutory requirement, and there was no proof, and there was no evidence that, in fact, there was any sort of prosecution under the law that had been, had happened. And, in fact, if he was driving the car at a getaway shooting, he probably was involved. There was, at this time, we could, we could assume that. Was he originally indicted for that? He was, that was the original, that was the original offense. That is the original offense. The original offense. And he entered, he entered an Alford plea, did not contest the elements to providing transportation. But there is nothing in this Washington statute whatsoever which states that there was an ongoing judicial proceeding. This puts it in parallel with what this court held in Salvador Lujano. And in that case, this court applied the explicit BIA definition and found that helping a guy escape from pretrial, pretrial, the conviction for helping a guy escape from pretrial detention didn't meet the standard because there was, this was pretrial, the statute did not require that there was an ongoing, an ongoing judicial proceeding here. And it's clear, and if we, if you go back to the criminal statute, how that criminal statute is applied, which is specifically what the BIA relied upon in coming to upon this definition, it goes through that the criminal cases is consistently held. And, in fact, in Aguilar, Justice Rehnquist noted that, that simply lying to, lying to an investigator about something which may be placed in front of a federal grand jury is not enough to impede an ongoing judicial proceeding. Now, so what do we do with Batista? Batista, Batista's essentially irrelevant in this case because Batista. I'm sorry, it's essentially what? Irrelevant. Irrelevant? The reason is this, is because Batista concluded, you know, we concede that the Washington statute and accessory after the fact are, for all intents and purposes, you know, analogous. But Batista did not provide a definition. Batista essentially said, well, it impedes justice and it clearly is. Well, the fact that it's not systematic doesn't mean that we can ignore it. You conceded, I think it's a wise concession, that the Washington statute is very similar to 18 U.S.C. Section 3. But we have, so we have a ruling by the BIA that admittedly does not give sort of the theoretical framework that the subsequent case does, Espinoza, but it is, appears to be right on point. How can we ignore Batista? Because that's not the analysis which is applied by this court. The courts apply Chevron deference to the definition of the statutory offense. The courts do not, however, defer. We've never looked at Batista, have we? No, no. The courts do not defer to application of, excuse me, the deference is to the actual definition of the offense, not application of the definition to the statute. That's revert view de novo. So in, and this is our point about Espinoza, and I'd like to review from my time effect, is that in Espinoza, the, in Espinoza, the part about where they define it, this court has, has deferred to, but when they come back in and try to, try to give a justification for Batista's finding, which is clearly, it seems obviously inconsistent with the definition, that's not deferred to because that's application of the definition to, application of the definition to a specific statutory offense. Well, except that the, except that the, except that Batista is pre-Espinoza, and the BIA, you've got at least one member who thinks that, that Batista's overruled, but apparently the board did not think that Batista was overruled. So I'm, I'm wondering what the, what the framework in Espinoza has to do with the prior ruling in Batista. Well, I think, I think the, this, this court has to apply the. If you asked us to do, to, to apply the Espinoza framework and apply it to the Washington statute, which you concede is on all fours with 18 U.S.C. Section 3, wouldn't we be effectively overruling Batista? Well, the BIA, to the extent that, that Espinoza contradicts Batista, the BIA has overruled it because they were sitting in bond. But they clearly did not. You've got one judge arguing that they did, and the majority has cited Batista approvingly, and it, it isn't, doesn't say it's overruled. To the extent that that, that the decision is inherent, they've done that, but this court has to review it, and to the extent that it says it's not overruled, to the extent that it's internally consistent because it does not require the definition applied to the BIA, it would not be subject to deference at all because it's internally inconsistent. The, the board can, that decision in, in Espinoza seems quite apparently it was written by committee because they first put out a definition, and then they go outside of that definition, they put a specific definition saying it's narrowly construed, then they go out and say, well, it's, we're not going to narrow it, it's not, then they go out and broadly construe it without using the elements they have. And it's internally inconsistent, and to the extent that it's internally inconsistent, it's not rational, it's not a permissible construction. Thank you. I'd like to resume my time. Yes, ma'am. Good morning. May it please the Court. My name is Alison Freyer for the Attorney General. In this case, the board reasonably concluded, as Mr. Hong concedes, that the Washington State statute under which he was convicted is essentially the same as 18 U.S.C. Section 3 being an accessory after the fact, and therefore it is also a crime relating to the obstruction of justice. The main point for the board in both Batista and later in Espinoza-Gonzalez for a crime relating to the obstruction of justice is a crime that has the specific intent to interfere with the due process of justice. That element of specific intent to interfere with justice was missing in misprision of a felony in Espinoza-Gonzalez, but is present in accessory after the fact. And that distinction was critical for the board, and I think that that distinction is why the decision is not internally inconsistent and why both decisions are correct and stand side-by-side without any contradiction. Now, when we look at the facts of this case, what do we know other than that the defendant gave a ride to somebody who had participated in a drive-by shooting? Do we know anything else? That's about all we know. We know that he was originally indicted for the drive-by shooting, and then he pled to giving a ride to another guy. So he was actually indicted for something else other than? Yes, but that's not what he pled to, so that's not. He actually pled down. Yes. And then he pled to giving a ride to someone that he knew committed the felony crime of drive-by shooting with the intent of avoiding that person's arrest, trial, or punishment, but that is all that we know about what happened. He might have taken him to the bus station. But we don't know at that point whether any of them were even suspected of anything. But we knew that Mr. Hong knew that the person he gave a ride to had committed the felony, but we don't know what they knew about what the police knew. Yes. I'm just trying to – we don't know anything about whether there was any ongoing proceeding, anything of that sort. No, we don't. We just know that Mr. Hong was trying to help this person avoid arrest, trial, or punishment. We don't know which one. We don't even know he wanted to do that. The fellow might have offered him $100 to take him to the bus station. We do know that he specifically intended to help the other man avoid arrest, trial, or punishment because it is an element of the crime to which he pled. So in his plea agreement, he does concede that that is what he intended to do. That's kind of interesting, doesn't it, because if I recall the cases that say a drive-by shooting might actually not be a crime of violence in some instances, depending on what you drove by and shot at. So in that instance, the drive-by shooter would not be removable, but the person who was driving the car might be because he was trying to take him away from the scene of the crime. Or maybe the drive-by shooter would be also an obstruction of justice because he fled the scene of his crime rather than being arrested. Is that the position of the government? It seems clear that fleeing arrest would not be an obstruction of justice. Well, this guy is just fleeing arrest with his friend. So his problem was he should have let them prosecute him for the drive-by shooting and by making the misstep of pleading down to a lower offense, he gets removed. I take it that's the government's position. That's possibly, yes, but certainly under the conviction to which he pled guilty, the government's position is that he is removable. But if you're only misprisoned, if you're only covering up the guy's crime later, that would be okay because that's not obstructing justice to cover up somebody else's crime. Correct, because there's no specific intent there. If you drive away with him in the car, that is obstruction of justice. If you have the proper specific intent, yes. Well, either way, you could have a specific intent, sure. Misprision of a felony does not require a specific intent to assist someone else in avoiding justice, and that point was critical for the board in Espinoza County. Are we going to have a Kukana problem here? That's the Supreme Court's recent decision saying that the defense counsel has an obligation to advise their clients of the immigration consequences of their pleas. Oh, Padilla? No, he will not. I'm sorry, Padilla, not Kukana. In the plea agreement that Mr. Hong signed, it clearly states that the conviction to which he's pleading may give him adverse immigration consequences, and he initialed that indicating that he was aware that this conviction could cause him to be removable from the United States, and nothing is pending at the trial court level. You know, there's no motion or anything pending, and I can't imagine how he could since he admitted that in his plea agreement. What was the sentence he received? He received a sentence of not more than one year. To be an aggravated felony, you must be sentenced to at least one year in prison, but Mr. Hong has both failed to exhaust and waived the claim that his sentence is insufficient for an aggravated felony, so that's no longer an issue before this Court. Opposing counsel mentioned Salazar-Luviano. That case came out after another case, Renteria-Morales, and did not try to narrow or otherwise affect the earlier case of Renteria-Morales, so the government would argue that the earlier case of Renteria-Morales should apply. What are we supposed to do with Batista, and particularly in light of our post-Espinosa cases? Are we supposed to try and reevaluate Batista in light of Renteria and one of the other cases, Salazar? No, I think Batista clearly answers the question at issue here and says that this is an aggravated felony. Are we required to give him Chevron deference? You are required to give Chevron deference to the Board's construction of the term in the INA relating to the obstruction of justice, but not to the Board's interpretation of state or federal criminal statutes. I would also note that the subchapter of the United States Criminal Code that includes all the obstruction of justice offenses is not specifically referenced in the INA, so there's nothing to indicate that that list should be exhaustive or inclusive. Other aggravated felony grounds do specifically reference the criminal code. Congress chose not to do that here, which suggests that they thought this should be wider than simply the subchapter 73. Moreover, at least one of the obstruction of justice subsections in the criminal code does not seem to require pending proceedings. There's Section 1512C, alteration of physical evidence, and that criminalizes the alteration, destruction, or otherwise altering physical evidence in order to hurt its integrity, so letting a car on fire to hide evidence of a crime that occurred in the car, that kind of a thing. From the plain language of the statute, no proceedings are required at that point, so someone could break that law by trying to avoid the discovery of the crime and to impede investigation, impede the instigation of an investigation. If there are no further questions. Thank you, Ms. Frayer. Thank you. Mr. Weber, I think you reserved some time. It really hasn't been addressed, but it was in the government's brief, and it was actually the basis of the decision, is that the basis of the finding that this statute in this case and the statute, the accessory after the fact in Espinosa, was included in this was the specific intent requirement, but also the other one. And the specific intent under this, under the definition, in the board's definition is the process of justice, which is exactly what that process of justice was in Aguilar. Now, the board wasn't required to adopt the federal statute and essentially the federal definition of this, this definition, in order to determine this. However, they did, and it has been deferred to. They cannot adopt a definition and then construe it narrowly and then go outside of that definition. The second issue is the relating to language, which we think is a big red herring because the relating to, whether it's a crime of obstruction of justice or a crime of relating to obstruction of justice, there is no distinction. The statute, the specific language of the INA statute is a defense relating to obstruction of justice. So when the offense has been defined by the BIA under its definition, there is no separate expansion beyond obstruction of justice. Salvador Lujano specifically stated this in footnote four. The BIA actually states in Espinosa that they are, that the crime, the offense, the crime we are defining in the definition is a crime of obstruction of justice. As far as what to do with Batista, I think that's one of the last issues here. I think to the extent, there's a problem with Espinosa because it's inherently inconsistent and tries, it puts forth a decision which on its face, a definition which renders the previous decision invalid. It overturns it. The fact that they don't say it does not, does not, cannot bar the court from like actually saying, okay, they haven't done it. Because to the extent that the definition applied does not apply, it is essentially inherently overturned. And their attempts, and our position on their attempts to, their attempts to resuscitate it and try to justify it, which Judge Rosenberg. I think we understand your point. You're over your time. Oh, okay. Thank you. Thank you. Thank both counsel for the argument, for difficult cases and interesting legal questions. We thank you, both of you, for your expertise.
judges: Fletcher B. , Fernandez, Bybee